UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


John Butler, an individual,

      Plaintiff,

v.                                Case No. 14-14752

FCA US, LLC, a Delaware limited      Sean F. Cox
liability company,                   United States District Court Judge

      Defendant.

_____/


**OPINION & ORDER**


This is an ERISA[1] benefits case.  Plaintiff John Butler ("Plaintiff" or "Butler") alleges, in

Count I, that Defendant FCA US, LLC[2] ("Defendant" or "FCA") wrongfully denied his claim for

benefits after he was seriously injured in an automobile accident.   He also claims that FCA

should be equitably estopped from denying his claim for benefits (in Count III) and that FCA

failed to provide him with requested plan documents, in violation of the statute (in Count IV).

The matter is currently before the Court on: 1) FCA's Motion for Summary, that seeks summary

judgment in its favor as to all three remaining counts; and 2) Plaintiff's Motion for Partial

Summary Judgment, which seeks summary judgment in his favor as to Counts I and IV (but not

Count III).  The parties have fully briefed the issues.  The Court finds that oral argument would

not aid the decisional process.  *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of

_____

[1] Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*

[2] Formerly known as "Chrysler Group LLC."

1

Michigan.  The Court therefore orders that the motions will be decided upon the briefs.  For the reasons that follow, the Court shall DENY Plaintiff's Motion for Partial Summary Judgment and GRANT Defendant's Motion for Summary Judgment.

## BACKGROUND

On December 16, 2014, Butler filed this action against FCA, asserting the following claims: 1) "Claim for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)" (Count I); 2) "Claim for Failure to Provide Notice of Deletion of Benefits to 29 U.S.C. § 1132(a)(1)(B)" (Count II); 3) "Claim for Equitable Estoppel 29 U.S.C. § 1132(a)(3)(B)" (Count III); and  4) "Claim for Failure to Provide Documents Pursuant to 29 U.S.C. § 1024(b)(4)" (Count IV). (D.E. No. 1, Pl.'s original complaint).

On February 17, 2015, FCA filed a Motion to Dismiss (D.E. No. 4).  In its Motion to Dismiss, FCA argued "that all of Plaintiff's claims in this case are barred by the doctrine of res judicata, which is also known as claim preclusion."  (*Id*. at 5).  In the alternative, FCA argued that Counts II and IV should be dismissed because they each fail to state a claim upon which relief may be granted.  (*Id.*)

This Court granted FCA's Motion to Dismiss in part and denied it in part.  The Court granted the motion to the extent that it dismissed Count II ("Claim for Failure to Provide Notice of Deletion of Benefits to 29 U.S.C. § 1132(a)(1)(B)").  (*Id*. at 14-15 & 17).

The Court denied the motion with respect to FCA's challenge to Count IV, allowing that count to proceed.  (*Id*. at 15-17).

Finally, the Court denied without prejudice "Defendant's motion to dismiss the entire Complaint based on the affirmative defense of res judicata."  (*Id.*).  In the body of the Opinion &

Order, the Court stated that "[i]f Defendant believes that it can better support its res judicata defense at the summary judgment stage, Defendant may raise it again at that time." (*Id*. at 12).

FCA filed its Answer and Affirmative Defenses on August 26, 2015. (D.E. No. 19). FCA filed its First Amended Answer and Affirmative Defenses on September 16, 2015. (D.E. No. 22).

On November 2, 2015, this Court issued the Scheduling Order (D.E. No. 23) that includes a March 1, 2016 deadline for discovery, a motion-filing deadline of April 1, 2016, a Final Pretrial Conference of August 29, 2016, and set the trial for September/October 2016.

On or about November 13, 2015, Plaintiff received MetLife's response to a subpoena for records and that response consisted of MetLife's claim file regarding Plaintiff's claim for disability benefits resulting from his accident and the 2007 Chrysler LLC Summary Plan Description.

On December 7, 2015, the parties stipulated to Plaintiff withdrawing his jury demand.

On March 9, 2016, Plaintiff filed a Motion for Leave to File First Amended Complaint (D.E. No. 38), which this Court denied in a May 17, 2016 Opinion & Order. (D.E. No. 44).

Accordingly, at this stage of the litigation, the following three counts remain pending in this action: Count I: "Claim for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)," Count III: "Claim for Equitable Estoppel 29 U.S.C. § 1132(a)(3)(B)," and Count IV: "Claim for Failure to Provide Documents Pursuant to 29 U.S.C. § 1024(b)(4)."

Following the close of discovery, Plaintiff and FCA each filed a dispositive motion. FCA filed a motion "To Dismiss Count I and for Summary Judgment on Counts I, III and IV." (D.E. No. 46). Plaintiff filed a "Motion for Summary Judgment of Count I and Count IV" of his

Complaint.  (D.E. No. 54).

This Court's practice guidelines, which are expressly included in the Scheduling Order issued in this case, provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a.  The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute.  The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Docket Entry No. 30 at 2-3).

In compliance with this Court's guidelines, in support of its Motion, Defendant FCA filed a "Statement of Material Facts Not In Dispute" (D.E. No. 49) ("Defs.' Stmt. A).  In response to that submission, Plaintiff filed a "Counter-Statement of Disputed Facts" (D.E. No. 54 at Pg ID 2682-2688) (Pl.'s Stmt. A").   In support of his Motion, Plaintiff filed a "Statement of Material Facts Not In Dispute" (D.E. No. 49) ("Pl.'s  Stmt. B).  In response to that submission, FCA filed a "Counter-Statement of Disputed Facts" (D.E. No. 53) (Def.'s Stmt. B").

Plaintiff worked for Chrysler LLC and it predecessor entities from 1967 until his retirement effective May 31, 2011.

4

**The 2002 SPD**

In 2002, Plaintiff was a participant in Chrysler LLC's Voluntary Group Accident Insurance ("VGAI") Program. (Pl.'s & Def.'s Stmt. B at ¶ 2). Plaintiff's copy of the 2002 Summary Plan Description ("SPD") for the VGAI is attached to Plaintiff's Complaint. (D.E. No. 1-3 at Pg ID 17). On the front page of that SPD, either Plaintiff or his wife wrote "Old Book – Life & Disability." (*Id.*; Pl.'s Dep. at 30-32). It is undisputed that the 2002 SPD included a "Permanent Total Disability" ("PTD") Benefit . (*See* D.E. No. 1-3 at Pg ID 23 & 63). That benefit was described as follows in the 2002 SPD:

Permanent Total Disability Benefit (Employee Only)

A permanent total disability benefit is payable provided:

- You sustain a covered accidental injury while insured.
- You are under age 70 when the injury occurs.
- You become permanently and totally disabled as a result of that injury within 180 days of the date of the accident so as to be unable to perform every duty of your occupation during the first year of disability, and thereafter be unable to engage in any occupation for the remainder of your life for which you are reasonably qualified by education, training, or experience.
- The disability has existed continuously for more than one year from the date you became permanently and totally disabled.

The full benefit amount for which you are insured on the date of your injury is payable to you less any amount paid or payable as a Voluntary Group Accident benefit because of a loss sustained as a result of your accident.

(*Id.* at Pg ID 63).

**The 2004 SMM**

In January of 2004, Plaintiff received a "Summary of Material Modifications (SMM)" for the VGAI Program. (Ex. B to Pl.'s Motion). It is undisputed that in the 2004 SMM, the VGAI Program still included a PTD Benefit. (Pl.'s & Def.'s Stmt. B at ¶ 5).

5

**The 2007 SPD**

In September of 2007, Plaintiff received a 2007 SPD.  (Pl.'s & Def.'s Stmt. B at ¶ 6).
Plaintiff's copy of the 2007 SPD he received is attached as Exhibit D to his motion.  On the
cover page of that document, there is handwriting that says "New Book – No Mention of
Permanent Total Disability Benefit.  Should Be in Policy?"

FCA asserts in its Statement that the 2007 SPD did not include a PTD Benefit.  Plaintiff
denies that, but does not direct the Court to anywhere in that SPD where a PTD Benefit is listed.
(Def.'s & Pl.'s Stmt. A at ¶ 9; D.E. No. 1-5).

This Court has reviewed the 2007 SPD.  Unlike the 2002 SPD, the 2007 SPD does not
contain a  PTD Benefit, in either the table of contents or the body of the SPD where the benefits
are spelled out.  The 2007 SPD lists the various benefits that are included in the VGAI Program
(a Paralysis Benefit, Comotose Benefit, Education Benefit, Child Care Benefit, Repatriation of
Remains Benefit, Common Disaster Benefit, Seat Belt and Air Bag Benefit, Traumatic Brain
Injury Benefit, Exposure and Disappearance Benefit, etc.)  But there is no PTD Benefit listed.

The only place in the 2007 SPD that Plaintiff points to is a reference in the following
paragraph:

> Special Tax Considerations
> Certain benefits, such as the Total Permanent Disability Benefit and the Special
> Education Benefit, may be taxable as ordinary income in the year in which you or
> your beneficiary receives the benefit.  You or your beneficiary should consult
> with your tax advisor regarding the tax consequences of any benefits received.

(D.E. No. 45-5 at Pg ID 1857).

The 2007 SPD identified Chrysler as both the Plan Sponsor and the Plan Administrator
and listed its address its address as 1000 Chrysler Drive Auburn Hills, MI 48326-2766.  (D.E.

6

No. 1-5 at Pg ID 234; Def.'s and Pl.'s Stmt. A at ¶ 12).

The parties agree that the 2007 SPD specifically advised participants to file their claim and any appeal with the insurance carrier, which was MetLife at the time of Plaintiff's accident.[3] (Compl. at Pg ID 3, "MetLife was the insurer," D.E. No. 46 at Pg ID 2230; D.E. No. 54 at Pg ID 2706; D.E. No. 1-5 at Pg ID 223-24).

The claims procedure is described in the 2007 SPD and states that determinations will be made by the insurance carrier. (Def.'s & Pl.'s Stmt. A at ¶ 15; D.E. No. 1-5 at Pg ID 224). The 2007 SPD advises participants of their rights under ERISA and advises that copies of plan documents can be obtained from the plan administrator, upon written request. (Def.'s & Pl.'s Stmt. A at ¶ 16; D.E. No. 1-5 at Pg ID 238).

Attached to Defendant's Motion as Exhibit F is the actual MetLife Certificate Of Insurance that was issued on March 1, 2008 for the program. It lists the various benefits that were included under the policy. It does not include a PTD Benefit. (*Id.*; Def.'s & Pl.'s Stmt. A at ¶ 11; White Dep. at 42; White Affidavit). The MetLife Certificate describes how to file a claim for benefits and defines "We, Us, and Our to mean MetLife." (*Id.* at ¶¶ 17 & 18).

**Plaintiff Has An Accident On July 8, 2008**

On July 8, 2008, Plaintiff was involved in an automobile accident and suffered a closed head injury. (Def.'s & Pl.'s Stmt. A at ¶ 35).

It is undisputed that the Summary Plan Description ("SPD") issued September 2007,

---

[3]Although the 2007 SPD identified Aetna as the claims administrator, effective March 1, 2008, MetLife became the insurance carrier under the program. (Deposition of D. White, FCA's Manager– Corporate Disability and Group Insurance Programs, at 39-40 & 42).

attached to Plaintiff's Complaint as Exhibit D, is applicable to Plaintiff based on his July 8, 2008 automobile accident.  (Def.'s & Pl.'s Stmt. A at ¶ 8; D.E. No. 1-5).

**Plaintiff's Claims Processing History And Requests for Plan Documents**

In a letter dated March 30, 2012, MetLife advised Plaintiff that it was denying his claim for benefits under the VGAI program.  The letter noted the requirements for the Traumatic Brain Injury Benefit.  It stated that Plaintiff had not provided additional information that was needed to evaluate his claim and that the claim was being denied.  It advised Plaintiff of his right to appeal the decision.  (D.E. No. 45-12)**.**

In a letter dated May 17, 2012 to MetLife, Counsel for Plaintiff (Michael Heck) advised that Plaintiff wished to file an appeal of the March 30, 2012 decision.  (Ex. L to Def.'s Br.). That letter stated "We believe that a further review of the medical documentation that has been provided would indicate that in fact my client did suffer a traumatic brain injury and should be entitled to a benefit as a result of the injury."  (*Id*.).

In a July 18, 2012, letter sent to Plaintiff's Counsel (Mr. Heck), MetLife advised that it had reviewed the claim again, after considering additional records and information Plaintiff had provided, and that the claim for benefits was still denied.  (D.E. No. 45-13).  That letter again went over the eligibility for the Traumatic Brain Injury Benefit.

In a December 19, 2012 letter sent to Metlife, Plaintiff and his wife stated: "We are writing this letter to request a copy of the Group Certificate and the Group Policy for the Voluntary Group Accident insurance program for which John was covered on the date of his accident, July, 2008.  Please send these documents to the above address.  Thank you."  (Ex. N to Pl.'s Motion, D.E. No. 45-15).

MetLife responded in a December 28, 2012 letter to Plaintiff, that stated, "[t]his letter is in response to your letter dated December 19th 2012 for a copy of the Group Certificate and copy of the policy you will need to request that directly from Chrysler."  (D.E. No. 45-16).  But MetLife's letter then listed the "address for them" as Benefits Express and gave an address in Lincolnshire Illinois.  (*Id.*).

On January 5, 2013, Plaintiff and his wife then sent a Letter to Benefit Express, Hewitt Associates, at 100 Half Day Road Lincolnshire, IL 60069-1442 that stated:

> We are writing this letter to request a copy of the Group Certificate and the Group Policy for the Voluntary Group Accident and Disability insurance program for which John was covered on the date of his accident, July 2008.  Enclosed is a letter from Metropolitan Life Insurance Company stating they do not have these documents and to contact Benefits Express.  Please send these documents to the above address.  Thank you.

(D.E. No. 45-17)

On February 14, 2013, Plaintiff's wife sent an e-mail to Anne-Marie Zilz at Chrysler, giving her Plaintiff's address "to send all information regarding" the PTD Benefit.  (D.E. No. 45-20).  She sent another e-mail to Zilz on February 22, 2013, following "up to inquire what information you have for us regarding Total Permanent Disability Benefit and its guidelines." (*Id.*).

In a letter to MetLife dated February 28, 2013, Plaintiff and his wife expressed their belief that Plaintiff was eligible for a PTD Benefit on the date of his July 8, 2018 accident.  (D.E. No. 45-21).  That letter stated "[w]e are applying for this benefit because of the plan information asked and received from Chrysler Corporation showing that John was covered for this particular benefit."  (*Id.*).

In a March 11, 2013 e-mail to Ann-Marie Zilz at Chrysler, Plaintiff's wife confirmed

that she had received the certificate from Chrysler.  (Ex. E to Def.'s Br.).  Plaintiff admits that he received the MetLife Certificate of Insurance by March 11, 2013. (Def.'s & Pl.'s Stmt. A at ¶ 30).

In a letter dated March 29, 2013, MetLife stated "[w]e have received your inquiry requesting a review for the Total and Permanent Disability plan provision within your Group Life Insurance Plan" and advised that "[a]ccording to our records, your Employer Chrysler Group, LLC does not have the Total and Permanent Disability provision in their Group Life Plan. Therefore, we are writing to you on this day to advise you there is no claim on file for you." (D.E. No. 45-22).

In a letter to Plaintiff dated May 16, 2013, MetLife stated "[e]nclosed is the MetLife Certificate that you requested.  If you have any questions in regards to the plan provisions stated in this certificate please contact your employer."  (D.E. No. 45-25).  On that document, someone wrote in handwriting, "John had requested by phone for the policy itself, and this is what they sent."  (*Id*.).

On October 9, 2013, Plaintiff's Counsel, Michael Shpiece, who has since past away, sent a letter to MetLife, Benefits Express, and Chrysler Group, LLC indicating "I am unclear about the exact names of the entities to which this letter should be sent" and asking that it be forwarded to the right place if it should have been sent elsewhere.  (D.E. No. 54-6).  The letter was addressed to "Chrysler Group, LLC, CIMS 485-02-57" at 1000 Chrysler Drive in Auburn Hills, MI 48326-2766."  (*Id.*).  That letter requested a copy of the policy that was in force at the time of Plaintiff's accident in July 2008.  (*Id.* at Pg ID 2816).  At that time, however, Plaintiff had already been provided with the MetLife Certificate of Insurance, and the 2007 SPD, that were in

force at the time of Plaintiff's accident.

**"*Butler I*" (Case Number 13-14958, Before Judge Zatkoff)**

On December 5, 2013, Plaintiff filed suit against Metropolitan Life Insurance Company ("MetLife") in this Court, alleging that MetLife wrongfully denied benefits to Plaintiff. The Complaint indicated that the policy at issue was a group accident policy issued by Metlife. It alleged that Plaintiff suffered a closed-head injury which rendered him unable to work and that Metlife wrongfully denied Plaintiff benefits under the policy, in violation of ERISA.

Plaintiff was represented by counsel in that action, Greg M. Liepshutz. That case was assigned Case Number 13-14958 and was assigned to the Honorable Lawrence P. Zatkoff.

The docket reflects that Metlife was served on January 2, 2014 and its answer was due on January 23, 2014.

On January 31, 2014, Counsel for MetLife sent Plaintiff's Counsel a letter that stated that Plaintiff did not meet the eligibility criteria for the Traumatic Brain Injury Benefit under the applicable terms and provisions of the Voluntary Group Accident Insurance Program ("VGA"). That letter enclosed the 2007 Summary Plan Description ("SPD") and the applicable MetLife Certificate of Insurance. The letter also stated:

> Mr. Butler was injured in an automobile accident on July 8, 2008. Chrysler advised that the enclosed SPD and the MetLife Certificate is applicable to him. Based on the material in the claim file and the provisions of the Plan, MetLife's adverse benefit determination is correct and neither arbitrary nor capricious. Attached are copies of the MetLife letters advising of its adverse benefit determination under the plan.

(Ex. B to Def.'s Br.). The letter closed by stating: "Please review this with Mr. Butler and advise me of your intentions. As you know, I have not yet filed an answer to the Complaint. Thank you for your attention to this." (*Id.*).

11

As of April 4, 2014, Plaintiff had not taken any action in the case.  On April 4, 2014, Judge Zatkoff issued an Order to Show Cause why the action should not be dismissed for failure to prosecute.  (D.E. No. 4 in Case No. 13-14958).  After Plaintiff failed to respond to that order, on April 22, 2014, Judge Zatkoff ordered that Plaintiff's cause of action was dismissed for failure to prosecute.  (D.E. No. 6 in Case No. 13-14958).  As this Court explained in its Opinion & Order addressing the prior Motion to Dismiss (D.E. No. 18 at Pg ID 708), that dismissal constitutes an adjudication on the merits.

### "*Butler II*," This Action, Filed On December 16, 2014

Represented by new counsel, Andrew Harris, Plaintiff filed this action against FCA on December 16, 2014.  As noted above, only Counts I, III, and IV remain pending.

Like the complaint in *Butler I*, Count I in this action asserts that Plaintiff was wrongfully denied a PTD Benefit after he was injured in the July 2008 accident.  Plaintiff does not challenge the denial of a Traumatic Brain Injury Benefit, or any other benefit denials.

The matter is now before the Court on the parties' cross-motions for summary judgment**.**

## STANDARD OF DECISION

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002). "The court's duty to view the facts in the light most favorable to the nonmovant does not require or permit the court to accept mere allegations that are not supported by factual evidence." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009). "This is so because the nonmovant, in response to a properly made and supported motion for summary judgment, cannot rely merely on allegations but must set out specific facts showing a genuine issue for trial." *Id.*

## ANALYSIS

In his Motion, Plaintiff seeks summary judgment in his favor as to Counts I and IV of his Complaint. In its Motion, FCA seeks dismissal and/or summary judgment in its favor as to all three remaining counts of Plaintiff's Complaint (Counts I, III, and IV).

**I.      Count I**

In Count I, Plaintiff claims that he was wrongfully denied PTD Benefits and seeks payment of such benefits from FCA. Plaintiff alleges that he was covered under the Plan, including a PTDB, at the time of his accident and that benefits were wrongfully denied to him.

It is undisputed that no claim under Count I can be brought against MetLife because of the prior action against MetLife by Plaintiff that was dismissed (*Butler I*). (Def.'s & Pl.'s Smt. A at ¶ 24). The parties also agree that the 2007 SPD is the operative summary description that applies to Plaintiff's claim, which is based on his July 8, 2008 automobile accident. (Def.'s & Pl.'s Stmt. A at ¶ 8; D.E. No. 1-5).

Each party contends that it is entitled to summary judgment in its favor as to Count I of

13

Plaintiff's Complaint.

### A.    Summary Of Plaintiff's Argument

In seeking summary judgment in his favor as to Count I, Plaintiff makes the threshold argument that FCA never removed the PTD Benefit from the 2007 SPD.  Plaintiff argues that PTD Benefit was not removed because there was no SMM issued after the 2002 SPD stating that the benefit was deleted.  Plaintiff also argues that he must have still had PTD benefit coverage because he was still paying premiums for it.  The Court refers to that as a threshold argument because if there was no PTD Benefit available under the VGAI Program in 2008, then there could be no wrongful denial of a claim for such a benefit.

After making that threshold argument, Plaintiff then argues that the denial was arbitrary and capricious because the denial was brief.  Plaintiff directs the Court to *MetLife's* March 29, 2013 letter to Plaintiff that stated the basis for denying his claim in a single sentence: "According to our records, your Employer Chrysler Group, LLC does not have the Total and Permanent Disability provision in their Group Life Plan."  (Exhibit U to Pl.'s Motion).

### B.    Summary Of FCA's Argument

In challenging Count I, FCA makes several arguments.  In seeking dismissal (as opposed to summary judgment) as to Count I, FCA makes a two-part argument.  First, FCA argues that if FCA and MetLife are not in privity (as was left open by this Court's prior Opinion & Order), then the Court must dismiss Count I because FCA is not the proper defendant for that claim-for-benefits count.  Second, FCA argues that if it and MetLife are in privity, then Count I of Plaintiff's Complaint is barred by res judicata.

FCA also contends that it is entitled to summary judgment in its favor as to Count I

because "at the time of Plaintiff's automobile accident, the VGAI Program did not include the

PTD Benefit that Plaintiff seeks in Count I.  MetLife was required to administer the VGAI

Program according to its terms.  Accordingly, the PTD Benefit Plaintiff seeks in Count I was not

a benefit available to him under the terms of the VGAI Program."  (Def.'s Br. at Pg ID 2216).

### C.    Analysis

This Court concludes that FCA is entitled to summary judgment as to Count I because

there was no PTD Benefit available under the applicable VGAI that was in force at the time of

Plaintiff's 2008 accident.[4]

Again, it is undisputed that 2007 SPD is the operative summary description that applies

to Plaintiff's claim, which is based on his July 8, 2008 automobile accident.  (Def.'s & Pl.'s

Stmt. A at ¶ 8; D.E. No. 1-5).

The *2002* SPD included a "Permanent Total Disability" ("PTD") Benefit.  Plaintiff

argues that FCA never removed the PTD Benefit from the 2007 SPD because there was no SMM

issued stating that the benefit was deleted.  Plaintiff also argues that he must have still had PTD

benefit coverage because he was still paying premiums for it.

In its response to Plaintiff's motion, FCA explains that Plaintiff's Counsel confuses

SMMs with SPDs:

> FCA was not required to issue a Summary of Material Modifications ("SMM") at
> the time the PTD benefit was no longer included in its VGAI Program because
> the 2007 SPD announced these changes. Plaintiff fails to understand the
> distinction between SMMs and SPDs. SMMs describe changes or modifications
> to a plan that are not reflected in an SPD that has not been updated. SPDs
> summarize the terms of a plan. ERISA regulations expressly provide that an

---

[4]Given the Court's conclusion, the Court need not address Defendant FCA's additional
arguments as to Count I.

SMM is not required for a plan change when a new SPD is issued. Department of Labor regulations expressly preclude Plaintiff's argument. 29 C.F. R. § 2520.104b-3 describes the requirements for the SMM. Section 104(b)-3(b) provides in relevant part as follows:

> (b) The summary of material modifications to the plan or changes in information required to be included in the summary plan description need not be furnished separately if the changes or modifications are described in a timely summary plan description. For example, a calendar year plan adopts a material modification on June 3, 1976. The modification is incorporated in a summary plan description furnished on July 15, 1977. No separate summary of the material modification is furnished.

29 C.F.R. § 2520.104b-3(b). The information to be provided in an SPD is described at 29 U.S.C. § 1022(b) and does not require a description of benefits that are not included in, or have been eliminated from, a plan.

(D.E. No. 52 at Pg ID 2618).

The Court agrees with FCA that Plaintiff's arguments fail.

"ERISA sets forth a comprehensive national framework by which companies may provide health and welfare plans to their employees. *See* 29 U.S.C. § 1144(a). Although ERISA does not compel companies to create such plans, it requires them to memorialize the terms of any such plans through formal plan documents." *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 428 (6th Cir. 2007). "Two documents, an SPD and a summary of material modifications ("SMM"), operate as the primary mechanisms by which a plan administrator discharges its disclosure obligations. *See* 29 U.S.C. § 1022(a)(1) (1994)." *Caradonna v. Compaq Computer Co.*, 2000 WL 1506454 (D. N.H. 2000).

The SPD is intended to function as the plain language summary of the plan's terms and benefits. As explained in *Crosby*:

> Aware of the technical language frequently (and perhaps necessarily) used to define these plans, Congress directed plan administrators to provide employees

16

> with a summary plan description that is "sufficiently accurate and comprehensive
> to reasonably apprise such participants and beneficiaries of their rights and
> obligations under the plan," *id.* § 1022(a), and to distribute this description using
> means "reasonably calculated to ensure actual receipt of the material," 29 C.F.R.
> § 2520.104b1 (b)(1). *See* 29 U.S.C. § 1022(b) (outlining requirements of a
> summary plan description); 29 C.F.R. § 2520.102–3 (same).

*Crosby*, 480 F.3d at 428. Statements in a SPD are binding and if such statements conflict with

those in the plan itself, the summary governs. *Id.*

"Every five years, assuming amendments have been made to the plan during that period,

a plan administrator must provide participants with an updated SPD integrating such

amendments." *Caradonna, supra,* at *4 (citing 29 U.S.C. § 1024(b)(1)). In the interim between

the publication of SPDs, a plan informs participants of material modifications by issuing SMMs.

*Id.*

In other words, "ERISA does not require plan administrators to republish the summary

plan description every time an amendment is made to the plan." *Crosby*, 480 F.3d at 430.

"After a company validly amends a plan, plan administrators need not immediately update and

republish the summary plan document; they may instead furnish employees with a summary of

material modifications 'written in a manner calculated to be understood by the average plan

participant,' 29 U.S.C. § 1022(a), so long as they provide an updated summary plan description

to participants every five years, *see id.* § 1024(b)(1)." *Crosby*, 480 F.3d at 428.

Here, the 2002 SPD included a PTD benefit. But a new SPD was issued in 2007 and it

did not include a PTD benefit. Plaintiff's argument that FCA never removed the PTD Benefit

from the 2007 SPD because there was no SMM issued stating that the benefit was deleted is

misplaced.  No SMM was required to be issued because a new SPD was issued in 2007.[5]  In

addition, the MetLife Certificate of Insurance (the full policy that is written in more technical

language) does not contain a PTD Benefit.

Plaintiff's other argument in support of his position that the PTD benefit was not

removed from the 2007 SPD does not fare any better.  Plaintiff argues that he must have still had

PTD benefit coverage because he was still paying premiums for it.  But the evidence shows that

Plaintiff continued to pay premiums for the VGAI program, which includes multiple benefits.

(*See* Affidavit of D. White, D.E. No. 52-3).  Plaintiff has not produced any evidence that

indicates that he was paying premiums for a PTD benefit after the 2007 SPD was issued.

Accordingly, the Court concludes that there was no PTD Benefit available under the

applicable VAGI program.  As such, there was no wrongful denial of PTD Benefits to Plaintiff.

FCA is therefore entitled to summary judgment in its favor as to Count I.

## II.    Count III

Count III of Plaintiff's Complaint asserts a claim for equitable estoppel.  Plaintiff's

motion does not seek summary judgment in his favor as to Count III but FCA's motion seeks

summary judgment in its favor as to Count III.  FCA contends that Count III fails as a matter of

law on multiple fronts.  The Court agrees.

_____

[5]Although Plaintiff has not the made the argument, it also does not appear that FCA was
required to state in the 2007 SPD that although prior plans had included it, this plan does not
contain a PTD benefit.  Such statements appear to be required when a group policy health plan
deletes certain benefits (*see* 29 C.F.R. § 2520.104b-3(d)(3)) but there does not appear to be such
a requirement as to other kinds of plans. Moreover, as this Court recognized in its prior Opinion,
a plaintiff cannot obtain an award of benefits based upon a failure to disclose plan changes.
(8/11/15 Opinion at 15) (citing *Schornhorst v. Ford Motor Co.*, 606 F.Supp.2d 658, 668 (E.D.
Mich. 2009); *Lewandowski v. Occidental Chem. Corp.*, 986 F.2d 1006, 1008 (6th Cir. 1993)).

It is undisputed that the elements of this count are as set forth in *Sprague v. GMC*, 133 F.3d 388 (6th Cir. 1998) (en banc). In that case, the Sixth Circuit concluded that equitable estoppel may be a viable theory in certain ERISA cases. *Id*. at 403. It articulated the standard for estoppel under ERISA as follows:

> (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Id.* at 403. The Sixth Circuit further explained that:

> Principles of estoppel, however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions. *See Fink v. Union Central Life Ins. Co.,* 94 F.3d 489, 492 (8th Cir. 1996); *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 458 n. 12 (11th Cir. 1996), *cert. denied*, 519 U.S. 1149, 117 S.Ct. 1082, 137 L.Ed.2d 217 (1997). There are at least two reasons for this. First, as we have seen, estoppel requires reasonable or justifiable reliance by the party asserting the estoppel. That party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party. Second, to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves. That would not be consistent with ERISA.

*Id.*

In Count III, the estoppel claim, Plaintiff alleges:

> 36.   Although Chrysler has not produced specific documentation that it deleted the PTDB, this Court [sic] assumes, arguendo, that it did delete the PTDB.
> 37.   Chrysler, either intentionally or negligently, never informed Butler of any change to the PTDB before the Accident, which caused Butler to reasonably and justifiably rely upon this benefit until the date of his Accident.
> 38.   Notwithstanding its failure to notify Butler of any changes to the PTDB as required by federal law, it is now attempting to argue that the PTDB does not apply to Butler.

39.      Chrysler's denial of the existence of the PTDB as to Butler will undeniably prejudice Butler.

40.      Given Chrysler's failure to provide Butler the required notice of any change to the PTDB it must be equitably estopped from arguing that the PTDB does not apply to Butler pursuant to 29 U.S.C. § 1132(a)(3)(B).

(Pl.'s Compl. at 8).

In his estoppel count, Plaintiff does not allege that FCA made a representation of material fact. What Plaintiff alleges in Count III is that FCA failed to disclose that it had removed the PTD benefit. But as this Court recognized in its prior Opinion, a plaintiff cannot obtain an award of benefits based upon a failure to disclose plan changes. (8/11/15 Opinion at 15) (citing *Schornhorst v. Ford Motor Co.*, 606 F.Supp.2d 658, 668 (E.D. Mich. 2009); *Lewandowski v. Occidental Chem. Corp.*, 986 F.2d 1006, 1008 (6th Cir. 1993)). Plaintiff has not pleaded a viable estoppel claim.

In addition, Plaintiff's attempt to try to construct an estoppel claim in his brief, that differs from that alleged in his Complaint, also fails. Plaintiff argues:

> Contrary to FCA's argument, Butler satisfied all of the elements of *Sprague*. First, FCA made a representation of material fact by claiming that the PTDB did not apply. Exhibit C. Secondly, FCA is clearly aware of this denial both pre-suit and during the litigation. Third, FCA intended for Butler to reply upon this denial. Exhibit C. Additionally, Butler, who has suffered from a permanent and total brain injury since July, 2008, was unaware [sic] of the true facts notwithstanding he and wife's multi-year odyssey to try and find pertinent benefit information (and only though litigation have they definitely learned that FCA never removed the PTDB) and has relied on this misrepresentation to his detriment (in the form of his failure to receive the PTDB). Exhibit K-Butler Affidavit.

(Pl.'s Br., D.E. No. 54 at Pg ID 2699). As FCA notes in it motion, Plaintiff has not pointed to any representation made by FCA that was false. The representation that Plaintiff points to by FCA is that "FCA made a representation of material fact by claiming that the PTDB *did not*

apply." (*Id.*) (emphasis added). But that is a true statement and Plaintiff is not trying to estop

FCA from denying that representation in any event. To try to assert an estoppel claim under

these facts, Plaintiff would have to assert that FCA made a representation to him that there *was* a

PTD benefit in 2007 and that FCA should be held to that representation. But Plaintiff has *not*

done that.[6]

FCA is entitled to summary judgment in its favor as to Count III because the estoppel

claim pleaded by Plaintiff, and the estoppel claim argued by Plaintiff in his brief, fail for

multiple reasons.

## IV.   **Count IV**

In Count IV, Plaintiff alleges that "FCA, the Plan Administrator, has a duty to provide a

plan participant such as [him] with plan documents (including the applicable insurance policy)

upon [his] written request." (Compl. at ¶ 42, citing 29 U.S.C. § 1024(b)(4)). Plaintiff alleges

that he "made his first request for plan documents on December 19, 2012" but, in violation of §

1024(b)(4), he did not receive any material responsive to his request. As a result of this alleged

violation, Plaintiff seeks "damages of $110 per day for each document requested starting thirty

(30) days after [his] December 19, 2012 request." (Compl. at 10).

ERISA provides, in pertinent part, that "[t]he administrator shall, upon written request of

---

[6]Moreover, even if he had made such a claim, it would fail because any reliance on such a representation by someone at FCA would be unreasonable when Plaintiff admittedly had the 2007 SPD in his possession and it did not include a PTD benefit. Indeed, either Plaintiff or his wife remarked on Plaintiff's copy of the 2007 SPD that it makes "No Mention of Permanent Total Disability Benefit." As noted above, under *Sprague*, principles of estoppel cannot be applied to vary the terms of unambiguous plan documents because there could be no reliance on a representation that was inconsistent with the plan documents.

any participant or beneficiary, furnish *a copy of the latest* updated summary, plan description, and *the latest* annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated." 29 U.S.C. § 1024(b) (emphasis added).

ERISA further provides, in pertinent part, that "Any Administrator" "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may *in the court's discretion* be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1)(B) (emphasis added).

"The statute defines the 'administrator' as either 'the person specifically so designated by the terms of the instrument under which the plan is operated' or, 'if an administrator is not so designated, the plan sponsor,' meaning 'the employer in the case of an employee benefit plan." *Butler v. United Healthcare of Tennessee, Inc*., 764 F.3d 563, 570 (6th Cir. 2014) (citing 29 U.S.C. § 1002(16)).

The Sixth Circuit has explained the difference between a "plan administrator" and a "claims administrator:"

> Some background is in order. ERISA-governed plans, as it turns out, often have two types of "administrators." Corporate Counsel's Guide to ERISA § 4:6 (2014). The first type—a claims administrator—is the entity that "administers claims for employee welfare benefit plans and has authority to grant or deny claims." *Moore*

> *v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006); *see also Corporate Counsel's Guide to ERISA* § 4:6 ("[A] claims administrator is the party responsible for claims review and approval under the given benefit plan."). The second type—a plan administrator—is usually the "employer who adopted the benefit plan in question." *Corporate Counsel's Guide to ERISA* § 4:6. "The phrase 'plan administrator' should not be confused with the term 'claims administrator.' ... [T]h[e] role [of claims administrator] usually does not confer on that party the status of plan administrator." *Id.* Quite often, indeed, the claims administrator and the plan administrator are not the same. *See, e.g., Moore*, 458 F.3d at 424–25, 438 (distinguishing between the employer/plan administrator and the insurance company/claims administrator); *see also Fendler v. CNA Grp. Life Assurance Co.*, 247 Fed.Appx. 754, 755, 758–59 (6th Cir. 2007).

*Butler*, 764 F.3d at 570.

The *Butler* decision made clear that it is only the *plan administrator* who can be assessed a penalty under 29 U.S.C. § 1132(c)(1)(B). *Id.* at 570 (noting that "[t]he district court awarded statutory penalties to John Butler, reasoning that ERISA allows penalties of "up to $100 a day" if the plan "administrator" "fails or refuses to comply with a request for any information" but explaining that because "United was not the plan administrator, the district court had no authority to impose penalties against it under t[he] statute.")

Moreover, other authority cited by FCA further confirms that the only entity that can be assessed a penalty under the applicable statute is the plan administrator and that requests sent to other entities, even requests sent to a claims administrator, cannot support a claim for penalties under the statute. *See, e.g., Jones v. UOP*, 16 F.3d 141, 144 (7th Cir. 1994) ("The statute is plain: if a plan administrator is designated in the plan instrument, that is who has the statutory duty to respond to requests for information in timely fashion under threat of monetary penalty if he fails to do so."); *McCarthy v. Ameritech Publishing, Inc.*, 763 F.3d 469, 485 (6th Cir. 2014) (Explaining that the plaintiff's failure to direct her requests for documents to the Plan Administrator, at the proper address listed in the plan documents, was "fatal" to her claim under

§ 1024(b)(4)); *Cole v. GM Retirement Prog. GM Life & Disability Benefits Program*, 2007 WL 470409 (E.D. Mich., J. Cohn 2007) (granting summary judgment in favor of the defendant as to claimed penalties under the statute, ruling that the plaintiff never made a proper request for information under the statute, where it sent requests for information to MetLife, but not to GM which was the Plan Administrator identified in the applicable SPDs).

It is undisputed that the 2007 SPD is the one that applies to Plaintiff's claims. The 2007 SPD identified "Chrysler, CIMS 485-07-21" as both the Plan Sponsor and the Plan Administrator and listed its address its address as 1000 Chrysler Drive Auburn Hills, MI 48326-2766. (D.E. No. 1-5 at Pg ID 234; Def.'s and Pl.'s Stmt. A at ¶ 12). And Plaintiff's own Complaint acknowledges that FCA is the plan administrator. (Compl. at ¶ 42).

But Plaintiff's § 1024(b)(4) claim is not based upon any written request for documents sent to Chrysler/FCA.

Plaintiff's Complaint (D.E. No. 1 at Pg ID 9), and Plaintiff's Motion for Summary Judgment (D.E. No. 45 at Pg ID 1643-44), direct the Court to the December 19, 2012 letter to Metlife, and the January 5, 2013 letter sent to Benefits Express, as the requests that forms the basis of this claim. Neither of those letters were sent to the Plan Administrator, as is required for a claim for penalties under the statute. *Butler, supra; McCarthy, supra.*

In responding to FCA's motion that directs the Court to the above authority, Plaintiff does not attempt to explain how he can proceed with a claim under the statute given that authority and given that Plaintiff did not send those two letters to the Plan Administrator. (*See* Pl.'s Resp. at 37). Rather, Plaintiff directs the Court to its August 11, 2015 Opinion, wherein this Court declined to dismiss this count at the pleading stage.

24

But this Court's prior opinion mistakenly referenced portions of the 2002 SPD and the 2004 SMM – although neither of those are applicable to Plaintiff's claim based on the 2008 accident.  It is now undisputed that the 2007 SPD applies to Plaintiff's claim.  And more importantly, the case law reflects that only the plan administrator can be assessed a penalty and that the written request has to be sent to the plan administrator at the address provided in the plan documents.  Here, the record evidence shows that they were not.  Thus, the letters sent by Plaintiff cannot support a claim for a penalty against FCA under the statute.

Plaintiff's briefs also try to argue that FCA should be assessed a penalty under the statute because it did not provide the Certificate of Insurance that had been issued by Aetna.  But all of Plaintiff's written requests asked for the certificate/policy *that was in force at the time of Plaintiff's July 2008 accident*:

- December 19, 2012 letter to Metlife, requesting "a copy of the Group Certificate and the Group Policy for the Voluntary Group Accident insurance program *for which John was covered on the date of his accident, July, 2008*."  (Ex. N to Pl.'s Motion, D.E. No. 45-15). (emphasis added)

- January 5, 2013 letter to Benefit Express, requesting "a copy of the Group Certificate and the Group Policy for the Voluntary Group Accident and Disability insurance program *for which John was covered on the date of his accident, July 2008*."   (D.E. No. 45-17) (emphasis added)

- October 9, 2013 letter from Plaintiff's Counsel, Michael Shpiece, requesting a copy of "all insurance policies related to the Plan *that were in effect at the time of Mr. Butler's accident in July 2008*." (D.E. No. 54-6 at Pg ID 2816) (emphasis added).

At the time of Plaintiff's July 2008 accident, the applicable SPD was the 2007 SPD and the applicable insurance policy was the MetLife Certificate Of Insurance that was issued on March 1, 2008 for the program.  None of the requests asked for the old Aetna certificate of insurance, that was in effect prior to March 1, 2008.  Moreover, the statute by its terms only requires the Plan Administrator to furnish a copy of the "latest" plan documents.  29 U.S.C. § 1024(b).  Thus,

Plaintiff cannot obtain a penalty from FCA for an alleged failure to provide the old Aetna policy.[7]

In addition, even if the December 19, 2012 or January 5, 2013 letters had been sent to FCA at its proper address, and even if Plaintiff had requested the old Aetna policy that was in force prior to March 1, 2008, this Court would still grant summary judgment in FCA's favor. That is because: 1) an award of penalties under the statute is discretionary; and 2) here, there is nothing to indicate that FCA acted in bad faith, and more importantly, Plaintiff cannot establish that he was prejudiced in any way by the short delay in getting the documents he requested. In *Cole,* the Honorable Avern Cohn concisely explained:

> Moreover, even assuming [Plaintiff] had made a proper request, liability does not automatically attach. In deciding whether to impose a penalty under 29 U.S.C. § 1132(c)(1), courts are advised to determine if the plaintiff beneficiary was prejudiced as a result of the Plan Administrator's delay in producing the plan documents. *See, e.g., Gatlin v. Nat. Healthcare Corp.,* 16 Fed. Appx. 283, 289 (6th Cir. Mar.2, 2001) (unpublished) ("prejudice to the beneficiary is a logical concern for in deciding whether to impose a penalty" under § 1132(c)(1) for failure to provide documents.); *Bartling v. Fruehauf Corp.,* 29 F.3d 1062, 1068 (6th Cir. 1994) ("[m]any courts have refused to impose a penalty under § 1132(c)(1)(B) in the absence of a showing of prejudice or bad faith.").

*Cole, supra,* at * 5.

Here, FCA persuasively argues that, even if there had been proper requests in writing

---

[7]The Court notes that Plaintiff asserts that he does not know if the MetLife Insurance Certificate effective March 1, 2008 is the applicable policy, and tries to suggest that maybe some other policy was in force at the time of this accident. (*See* D.E. No. 54 at Pg ID 2683, neither admitting or denying that the MetLife Certificate effective March 1, 2008 was applicable to his claim; D.E. No. 54, Plaintiff's Counsel stating that he "still does not have the Group Policy from AETNA.").  But FCA has presented evidence to establish that the MetLife Certificate of Insurance – effective March 1, 2008 – is the policy that was in force in at the time of Plaintiff's July 2008 accident and Plaintiff has not presented any evidence to show otherwise.

sent to it for the plan documents, a discretionary award of penalties would not be appropriate here because "there is no showing or evidence suggesting that FCA acted in bad faith.  Once FCA learned of a request for the Certificate, it provided the Certificate to Plaintiff.  Further, by receiving the Certificate on March 11, 2013, Plaintiff was not prejudiced because he admittedly already had the 2007 SPD which described the benefits available under the VGAI Program and the Certificate added nothing to the SPD descriptions.  Moreover, Plaintiff admitted that he never read the Certificate."  (D.E. No. 46 at Pg ID 2235).

Accordingly, for all of these reasons, FCA is entitled to summary judgment in its favor on Count IV.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment is DENIED and Defendant's Motion for Summary Judgment, as to Counts I, III, and IV, is GRANTED.

IT IS SO ORDERED.

S/Sean F. Cox_____
Sean F. Cox
United States District Judge

Dated:  November 14, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 14, 2016, by electronic and/or ordinary mail.

S/Jennifer McCoy_____
Case Manager