
# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: August 22, 2017

Mr. William E. Altman
Vercruysse, Murray & Calzone
31780 Telegraph Road
Suite 200
Bingham Farms, MI 48025

Mr. David M. Davis
Law Offices
401 S. Old Woodward Avenue
Suite 400
Birmingham, MI 48009-6629

Mr. Andrew M. Harris
Kitch Drutchas Wagner Valitutti & Sherbrook
One Woodward Avenue
Suite 2400
Detroit, MI 48226

Ms. Susan Healy Zitterman
Kitch Drutchas Wagner Valitutti & Sherbrook
One Woodward Avenue
Suite 2400
Detroit, MI 48226

Re: Case No. 16-2726, *John Butler v. FCA US, LLC*
Originating Case No. : 2:14-cv-14752

Dear Counsel,

The Court issued the enclosed opinion today in this case.

>                         Sincerely yours,
>
>                         s/Cheryl Borkowski
>                         Case Manager
>                         Direct Dial No. 513-564-7035

cc: Mr. David J. Weaver

Enclosure

Mandate to issue

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0485n.06

No. 16-2726

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 22, 2017
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| JOHN BUTLER, | ) |
| Plaintiff-Appellant, | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| FCA US, LLC, | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) |

Before: GUY, ROGERS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. John Butler worked for Chrysler for more than 40 years. He purchased accident insurance through the company, and filed a claim for benefits when a car crash left him unable to work. Chrysler's successor, Fiat Chrysler Automobiles US, LLC (whom we refer to simply as Chrysler) denied the claim through the insurer then administering the accident-insurance plan, MetLife. Butler then sued Chrysler under the Employee Retirement Income Security Act of 1974 (ERISA), arguing that he was entitled to benefits and that Chrysler had wrongfully refused to provide him with plan documents. The district court granted summary judgment to Chrysler. We affirm.

I.

Butler was injured in a car crash in July 2008. After the crash, he was diagnosed with post-traumatic stress disorder, post-concussion syndrome, double vision, and hearing loss.

Chrysler placed Butler on disability leave until he retired in May 2011. At that point, Butler began to receive a disability pension.

Six days after retiring, Butler filed a claim for additional benefits under Chrysler's accident-insurance plan. The insurer then administering the plan, MetLife, construed Butler's claim as one for "Traumatic Brain Injury Benefit[s]" as defined by the insurance policy in effect in July 2008. MetLife denied the claim and upheld its decision when Butler appealed. Butler responded by requesting a copy of the 2008 policy—first from MetLife, and then from Benefits Express, another company that helped Chrysler administer its employee-benefit plans. Before he received the policy, Butler consulted the plan's latest "summary plan description"—a document that describes the terms of an ERISA plan in terms "calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a). Butler wrote to MetLife, asserting that he was entitled to "Total Permanent Disability Benefit[s]" under the summary. MetLife responded that Chrysler's accident insurance did not include such a benefit.

Butler thereafter brought this lawsuit, alleging (among other things) that Chrysler improperly denied him benefits in violation of 29 U.S.C. § 1132(a)(1)(B) and failed to provide him with plan documents in violation of 29 U.S.C. § 1024(b)(4). Chrysler moved for summary judgment, which the district court granted. The court held that Chrysler's accident insurance did not cover total and permanent disabilities, and that nothing in the summary plan description should have led Butler to believe otherwise. The court also held that Butler's requests for a copy of the 2008 policy did not trigger Chrysler's statutory duty to produce the document. This appeal followed.

II.

A.

We review de novo the district court's decision that Butler was not entitled to benefits. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014).

A participant in an ERISA plan can sue "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). A plan's terms must be memorialized in a "written instrument." *Id.* at § 1102(a)(1). A summary plan description can be part of a plan's governing instrument, but only if the summary itself so provides. *See Bd. of Trs. v. Moore*, 800 F.3d 214, 220 (6th Cir. 2015). Here, the 2007 summary—the one in effect when Butler was injured in July 2008—provides that "[t]his handbook is intended to be the summary plan description as well as the plan document." But the summary also states that, if the summary conflicts with the accident-insurance policy, then "the terms of the . . . policy will prevail." Thus, if the policy does not list the benefit that Butler now seeks, he cannot recover it under § 1132(a)(1)(B)— regardless of whether the summary lists the benefit.

The document that the parties refer to as the MetLife Certificate is "part of the . . . policy" that was in effect when Butler was injured. That document lists each of the benefits included in Chrysler's accident insurance. A benefit for total and permanent disabilities is not among them, which means that the policy does not include that benefit. Butler therefore cannot recover under § 1132(a)(1)(B).

Butler next argues that the 2007 summary plan description is misleading. If a summary would lead an average plan participant to believe that a benefit is included when it is not, then a participant can recover under 29 U.S.C. § 1132(a)(3), which authorizes district courts to remedy

-3-

"false or misleading" statements in summaries with "appropriate equitable relief." *See CIGNA Corp. v. Amara*, 563 U.S. 421, 438-42 (2011).

Here, Butler points to two sentences in the 2007 summary that, he says, led him to believe that Chrysler's policy covered total and permanent disabilities. First, the summary states that it is "describ[ing] the [accident-insurance plan] in effect as of April 1, 2004, and the benefits for . . . accidental injuries sustained on or after that date." In Butler's view, that means that every benefit available in April 2004 was still available in 2007, including the total-permanent-disability benefit, which was listed in a 2002 summary plan description, and remained part of the plan after it was amended on April 1, 2004.

If an average plan participant read only that sentence, we agree that he might be misled. But we presume that participants read the entire summary, interpreting provisions in context. *See Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 851 (6th Cir. 2006). The 2007 summary discusses in detail each benefit included in Chrysler's accident insurance. The total-permanent-disability benefit is not mentioned, much less explained. That should have alerted participants that the benefit was no longer part of the policy. Butler responds that, given the summary's reference to the benefits available in 2004, the omission of this benefit might have been a "drafting gaffe." Appellant's Br. at 27. But the 2007 summary recited at least a dozen other changes to Chrysler's accident insurance, *e.g.*, a new benefit for injuries sustained in a car accident where an airbag deploys. That makes reasonably clear that Chrysler removed the total-permanent-disability benefit deliberately, as one change among many that year.

Second, Butler contends that the summary's statement that the "Total Permanent Disability Benefit . . . may be taxable as ordinary income" implies that the benefit remained part of the policy. Some plan participants who qualified for the total-permanent-disability benefit

-4-

No. 16-2726, *Butler v. FCA US, LLC*

before it was removed from the plan, however, might have received their benefit payment afterward. The warning thus does not imply that the benefit remained available.

Butler's final point with respect to benefits is that, in response to Butler's interrogatories, Chrysler admitted that the total-permanent-disability benefit was available until February 28, 2008. By that admission, Butler contends, Chrysler conceded that the 2007 summary did cover total and permanent disabilities. But again, Butler's inference is mistaken. The policy that was in effect through February 2008 explicitly covered total and permanent disabilities. Thus, Chrysler's admission was simply an acknowledgment that, up until March 2008, the policy conflicted with the 2007 summary—and that the policy therefore governed. Once the new policy took effect, there was no conflict, and the total-permanent-disability benefit became unavailable. Butler responds that he was not notified when the change took effect on March 1, 2008. But the 2007 summary was itself notice that the benefit would be discontinued. That Butler actually received several additional months of coverage did not require Chrysler to notify him again when the extra coverage ended. Butler's claim for benefits fails.

B.

Butler also argues that Chrysler refused to give him plan documents in violation of 29 U.S.C. § 1024(b)(4). Under that provision, if a plan participant requests in writing certain plan documents—including the "instrument[] under which the plan is established or operated"— the employer must provide the documents within 30 days. *Id.*; 29 U.S.C. § 1132(c)(1). If the employer fails to do so, then a district court "may in [its] discretion" award the participant up to $100 per day in damages. *Id.* at § 1132(c)(1). We review for an abuse of discretion a district court's decision not to award damages. *Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 706 (6th Cir. 2014).

-5-

As noted above, Butler wrote to MetLife in December 2012, requesting "a copy of the Group Certificate and the Group Policy" under "which [Butler] was covered on the date of his accident." MetLife referred Butler to Benefits Express, another company that helped Chrysler administer its employee-benefit plans. Butler sent Benefits Express the same letter he had sent MetLife, but he never heard back from them. Thus he emailed Chrysler directly on February 14 and 22, 2013—both times requesting "information regarding the Total Permanent Disability Benefit." On March 11, 2013, Chrysler emailed Butler the MetLife Certificate, which, at the time Butler was injured, also served as the plan policy.

Butler first contends that Chrysler violated § 1024(b)(4) because they took three months to produce the MetLife Certificate. As an initial matter, however, we doubt that Butler's letters to MetLife and Benefits Express triggered Chrysler's duty to produce, which arises only when a plan participant writes to the employer itself. *See, e.g.*, *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 485 (6th Cir. 2014). Moreover, the district court properly considered whether the delay prejudiced Butler. *Cultrona*, 748 F.3d at 708. And Butler presented no evidence of prejudice.

Butler also contends that, although he possessed the 2007 summary, he was entitled to the 2007 policy itself, which Chrysler failed to produce. But an employer need produce a document only if a participant provides "clear notice" that he wants it. *Cultrona*, 748 F.3d at 707. In Butler's letters, he requested only the policy under "which [he] was covered on the date of his accident"—that is, the 2008 policy. And in Butler's emails, he did not request any specific documents at all. Moreover, given that the 2007 policy was not in effect when Butler was injured, he could not recover benefits under that policy. Chrysler's failure to produce the

2007 policy therefore did not prejudice Butler. Hence the district court did not abuse its discretion by refusing to award Butler damages.

The district court's judgment is affirmed.

-7-